FILED

2022 Aug-18  PM 01:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **DAVID LIGHT, JR.** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  4:21-cv-000236-RDP** |
| | } | |
| **KILOLO KIJAKAZI, Acting** | } | |
| **Commissioner of  Social Security,** | } | |
| | } | |
| **Defendant.** | } | |
| | } | |

## MEMORANDUM OF DECISION

Plaintiff David Light, Jr. brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claims for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). *See* 42 U.S.C. §§ 405(g) and 1383(c).  Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

### I.    Proceedings Below

This action arises from Plaintiff's applications for a period of disability, DIB, and SSI filed on July 27, 2018, alleging an onset date of disability of June 15, 2017. (Tr. 322-30).  Plaintiff's applications were denied on April 12, 2019.  (Tr. 197, 199). On June 12, 2019, Plaintiff filed a request for hearing before an Administrative Law Judge ("ALJ").  (Tr. 236-37.) Plaintiff's request was granted, and a hearing was held on March 12, 2020.  (Tr. 98). Plaintiff, Plaintiff's counsel, and Vocational Expert ("VE") Renee Smith attended the hearing.  (Tr. 98). In order to further

develop the record regarding Plaintiff's treatment between April 2016 to March 2018, the hearing was continued. (Tr. 98-108). The ALJ hearing resumed on July 8, 2020, and Plaintiff, Plaintiff's counsel, and VE Tyra Watts were there. (Tr. 57-97). On July 28, 2020, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act. (Tr. 35-52).

On September 25, 2020, Plaintiff requested that the Appeal Council review the ALJ's decision. (Tr. 315-18). As a part of that request, Plaintiff submitted two additional pieces of medical evidence to the Appeals Council: (1) the psychological evaluation findings of Dr. June Nichols dated October 26, 2020 and November 27, 2022 and (2) additional records from the United Doctors Medical Center dated January 23, 2020 through November 24, 2020. (Tr. 1, 8-10, 22-29, 109-95, 439-41). The Appeals Council denied Plaintiff's request for review on December 16, 2020, determining that the new evidence did not provide a basis for changing the ALJ's decision. (Tr. 2-4). Therefore, the ALJ's decision and the Appeals Council's denial of review became the final decision of the Commissioner and a proper subject of this court's appellate review. (Tr. 3).

At the time of the hearing, Plaintiff was 47 years old. (Tr. 319). He has achieved a high school education. (Tr. 392). He weighs approximately 435 pounds and is six feet, ten inches tall. (Tr. 82). He has previous work experience as a police officer,[1] car salesman, and food product salesman. (Tr. 77). Plaintiff was self-employed from 2013 until his alleged disability onset date. While self-employed, Plaintiff engaged in steel-cover and steel-awning construction work, both in a direct labor and supervisory role. (Tr. 77-79). At the hearing, Plaintiff alleged he is limited due to back pain, numbness in his legs, knee pain, limited mobility of the right shoulder, sleep apnea, depression, neck stiffness, chronic pain, anxiety, post-traumatic stress disorder ("PTSD"), and

---

[1] Plaintiff's previous work experience as a police officer was not relevant here because during determination of his residual function capacity ("RFC"), the ALJ only considered substantial gainful activity done in the last 15 years. *See* 20 C.F.R. § 404.1565(a).

swelling of his hands, feet, knees, and legs.  (Tr. 63-75). Plaintiff testified having multiple back surgeries, the latest being in 2009, and shoulder surgeries, in May and August of 2018. (Tr. 63-64). Plaintiff further testified that he was currently using a CPAP machine to treat his sleep apnea, and he had been taking Paxil daily for years to treat his PTSD and was recently prescribed blood pressure medicine to treat his swelling. (Tr. 70, 71, 75). Plaintiff's orthopedic surgeon suggested he undergo a neck fusion surgery for pain relief. (Tr. 72).

An ALJ-ordered mental consultative examination was never completed. (Tr. 72). Plaintiff explained this is because he arrived an hour late for the appointment. (*Id.*). On a "good day," Plaintiff can go shopping with his wife, but a majority of his waking hours are spent in his recliner. (Tr. 76, 87). Plaintiff is still "pretty sociable" when someone calls him on the phone. (Tr. 88).

The VE testified that a person with Plaintiff's age, education, work experience, and the limitations included in his RFC could perform the work duties of an information clerk and weight recorder. (Tr. 91-92.) The VE further testified that if such an individual is unable to concentrate for five consecutive minutes, he is not necessarily precluded from performing the required work duties of those jobs.  (Tr. 94).

The record evidence shows that Plaintiff initially visited the Northeast Alabama Neurological Center in Gadsden, Alabama on April 3, 1996. (Tr. 473). While working as a police officer, Plaintiff was pinned between two vehicles.  (*Id*.). Dr. James White ordered Plaintiff to complete two weeks of outpatient physical therapy with hopes that surgery could be avoided. (*Id.*). However, after a myelogram and myelographic CT, Dr. White determined that Plaintiff had herniated his L3 and L4 discs and scheduled surgery. (Tr. 467). On October 1, 1996, Plaintiff underwent a subtotal hemilaminectomy on L3-4 and L4-5 for excision of the herniated discs. (Tr. 489). Post-operative physical therapy notes indicate improvements in flexibility and mobility, and by April 30, 1997, Dr. White released Plaintiff to work as needed. (Tr. 459, 475).

Plaintiff was diagnosed with a recurrent lumbar disc herniation at L4-5, lumbar radiculitis in his left lower extremity, and degenerative lumbar disc disease at L4-5. (Tr. 529). On June 15, 2017, Dr. Larry Parker performed a decompressive laminectomy with a facetectomy and fusion at L4-5 on Plaintiff at Crestwood Medical Center in conjunction with The Orthopedic Center. (*Id.*). A post-operative MRI scan from early August 2007 noted a diagnosis of lumbar radiculitis in the left lower extremity and lumbar spinal stenosis at left L4-5. (Tr. 519, 527). Subsequently, on August 13, 2007, Dr. Parker performed a reentry decompressive laminotomy and decompression of sterile access at Plaintiff's left L4-5. (Tr. 527).

Although continuing to complain of back pain, Plaintiff was found to have normal motor strength, intact sensation, and no crepitus of deformity. (Tr. 509-17). On September 28, 2009, Dr. Parker performed a lumbar laminectomy and fusion at L3-4, and removed some hardware at L4-5. (Tr. 524). On October 16, 2009, Dr. Parker removed the retained hardware from Plaintiff's right L3-4. (Tr. 522). Post-operative examination records note that Plaintiff retained normal motor strength, normal sensation, good range of motion in the hips, knees, and ankles, and no crepitus or deformity. (Tr. 506-08). After the last post-operative examination performed on April 7, 2010, Plaintiff did not return to Dr. Parker until February 5, 2013, when Dr. Parker diagnosed him with cervical stenosis, cervicalgia, and cervical radiculitis. (Tr. 504). Plaintiff was placed on a home exercise program as treatment. (Tr. 505).

Plaintiff's next visits to The Orthopedic Center, between January 31, 2018 and November 21, 2018, arose from complaints of right shoulder pain and bilateral knee pain. Dr. Michael Cantrell's examination findings note that Plaintiff sustained moderate to severe medial compartment osteoarthritis in his knees and a possible partial thickness anterior cruciate ligament ("ACL") tear in his left knee. (Tr. 617-19, 721,729, 733). After Plaintiff declined Dr. Cantrell's suggestion for a right knee arthroplasty procedure, Dr. Cantrell provided Plaintiff with at home

exercises, a knee brace, and scheduled him for viscosupplementation injections. (Tr. 721). On November 7, 2018, Dr. Cantrell performed a left knee arthroscopy with patellofemoral chondroplasty, meniscectomy, and medial femoral chondroplasty to treat Plaintiff's diagnoses of a meniscus tear. (Tr. 724).

In February and May 2018, x-rays and MRIs of Plaintiff's right shoulder showed acromioclavicular arthritis, as well as a large full thickness supraspinatus tear. (Tr. 713-14, 717, 731-32). On May 4, 2018, Plaintiff underwent a right shoulder arthroscopy with debridement of a biceps partial tear and labrum, chondroplasty, subacromial decompression, rotator cuff repair, and distal clavicle resection by Cantrell. (Tr. 726). In August of that same year, Plaintiff reported to Dr. Cantrell that his shoulder "felt great," and it was noted that Plaintiff's shoulder had an excellent active range of motion. (Tr. 621, 741).

Plaintiff's medical evidence also includes treatment records and examination findings from the United Doctors Family Medical Center ("UDFMC") reportedly related to his alleged onset date through December 26, 2019. The supplemental evidence that Plaintiff submitted to the Appeals Council contains records from January 23, 2020 through November 24, 2020. Examination findings show routine visits to Dr. Alan Tenchavez for management of chronic neck, back, shoulder, and knee pain. (Tr. 590-611, 625-61, 643-66, 669-708, 746-822). Dr. Tenchavez diagnosed Plaintiff with right knee crepitus and osteoarthritis, a limited right shoulder range of motion, and cervical and lumbosacral spine muscle spasms. (*Id.*). Dr. Tenchavez reported that Plaintiff had normal muscle tone, a regular heart rate and rhythm, and lungs clear to auscultation. (*Id.*). He was prescribed medications and reported that it kept his pain "well-controlled" without adverse effects. (Tr. 658, 686, 749, 751, 754, 757, 760, 766, 769, 775, 781, 787, 796, 809, 811, 814).

On March 20, 2019, Nurse Nancy Gray Seaman conducted a Social Security Disability Consultative Examination. (Tr. 636-42). Nurse Seaman diagnosed Plaintiff with seven conditions: (1) chronic pain, (2) post laminectomy syndrome, (3) post-procedural pain in the right shoulder and right knee, (4) morbid obesity, (5) depression, (6) self-reported PTSD, and (7) hypertension. (Tr. 639). She noted that Plaintiff had a decreased range of motion of the cervical and lumbar spine and right shoulder, tenderness of the lumbar spine and over the paraspinal muscle, decreased quadriceps, and slight slow deliberate antalgic gait without an assistive device. (Tr. 635-42). She found Plaintiff had a normal range of motion in his other his joints, full strength in the rest of his muscle groups, intact sensation throughout his body, normal grip strength, intact fine and gross manipulation, regular heart rate and rhythm, lungs clear to auscultation, and ability to write, pick up paper, and transfer on and off the exam table.  (*Id*.). Nurse Seaman concluded that Plaintiff's "high amount of pain, with his depression" would preclude him from obtaining and retaining gainful employment.  (Tr. 640).

On April 12, 2019, a state agency medical consultant, Dr. Robert H. Heilpern, also reviewed Plaintiff's medical history and assessed Nurse Seaman's consultative examination report. Dr. Heilpern found Plaintiff able to perform at a light exertional level, with the exception that he should never climb ladders, ropes, scaffolds, and should always avoid concentrated exposure to extreme heat, extreme cold, vibrations, and hazards such as heights and machinery. (Tr. 200-23).

Plaintiff underwent a psychological evaluation with Dr. June Nichols on October 26, 2020. (Tr. 1, 22-29, 72). Dr. Nichols diagnosed Plaintiff with the following mental health conditions: (1) panic disease, (2) PTSD, (3) obsessive compulsive disorder, (4) depressive disorder, and (5) intermittent explosive disorder.  (Tr. 28). Dr. Nichols concluded that Plaintiff was unable to do the following: (1) maintain attention, concentration, and/or pace for periods of at least two hours, (2) perform activities within a schedule and be punctual within customary tolerances, (3) adjust to

routine and infrequent work changes, (4) interact with supervisors and/or co-workers, and (5) maintain socially appropriate behavior and adhere to basic standards of neatness or cleanliness. (Tr. 1). Dr. Nichols also estimated that during an eight-hour workday Plaintiff would be off-task fifty percent of the time and would fail to report for work 10-15 days in a 30-day period. (*Id.*).

## II.     ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as activity that is both "substantial" and "gainful." 20 C.F.R. § 1572. "Substantial" work activity is work that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful" work activity is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in activity that meets both criteria, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's RFC, which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the

claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  *Id.*  If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(a)(4)(v).  In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since his alleged onset date of disability. (Tr. 38). The ALJ also found that Plaintiff had the following severe impairments: obesity, degenerative disc disease of the cervical spine, diverticulitis, status post-rotator cuff repair, post-laminectomy at L3-4 and L4-5 and hardware removal, status post-left knee meniscectomy, and right knee osteoarthritis. (*Id.*). However, based upon the medical evidence, the ALJ determined that Plaintiff did not have any impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § 404 Subpart P, Appendix 1.  (Tr. 42).

After consideration of the medical evidence and Plaintiff's subjective complaints, the ALJ found that Plaintiff retained the RFC to perform light work (as defined in § 404.1567(b) and § 416.967(b)) with the following limitations: no pushing or pulling leg controls; occasionally overhead reaching with the upper right extremity; no exposure to excessive vibration, unprotected heights, or hazardous machinery; no climbing ladders, ropes, or scaffolds; no kneeling, crouching, or crawling; occasionally climbing stairs; and any work must have a stand or sit option.  (*Id.*). The ALJ further determined that while Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, his statements concerning the intensity,

persistence, and limiting effects of the symptoms were not entirely consistent with the evidence in the record. (Tr. 43).

Although the ALJ found Plaintiff unable to perform any past relevant work, she concluded there were jobs that exist in the national economy in significant numbers that Plaintiff would be able to perform. (Tr. 49-50). These jobs included that of an information clerk and weight recorder. (Tr. 51). Thus, the ALJ found that Plaintiff was not under a disability as defined in the Act, from June 15, 2017 through the date of her decision. (Tr. 52).

## III.   Plaintiff's Argument for Remand or Reversal

Plaintiff makes five specific arguments: (1) that when the Appeals Council denied review, it erroneously held that there is not a reasonable probability the evidence submitted about his psychological evaluation conducted by Dr. Nichols would change the outcome of the ALJ's decision, (2) that the ALJ rejected the opinions of Nurse Seaman without showing good cause without stating, at least with "some measure of clarity," the grounds for rejecting those opinions, and that the ALJ substituted her own opinions for that of the Commissioner's medical expert, (3) that the ALJ improperly relied on Plaintiff's daily activities in denying benefits, and (4) that the ALJ failed to give his obesity proper consideration pursuant to SSR 02-1p or SSR 19-2p, and (5) that the ALJ's decision is not based on substantial evidence.

## IV.   Standard of Review

Plaintiff's arguments raise two questions: (1) whether substantial evidence supports the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (2) whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). A district court may not reconsider the

facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701. And, whether new evidence meets the "new, material, and chronologically relevant standard" is a question of law subject to *de novo* review. *Washington v. Commissioner*, 806 F.3d 1317, 1321 (11th Cir. 2015).

## V.    Discussion

The court addresses each of Plaintiff's arguments in turn.

### A.    The Appeals Council's Determination that Dr. Nichols's Examination Findings do not Demonstrate a Reasonable Probability of a Changed Outcome was Not in Error

Plaintiff argues that the Appeals Council's determination that there was not a reasonable probability that Dr. Nichol's consultative psychological examination findings would change the outcome of the ALJ's decision was in error. (Doc. 17, pg. 21). However, this argument fails because, among other reasons, the new evidence does not contradict the ALJ's conclusion regarding Plaintiff's mental condition.

With only a few exceptions, a claimant may present new evidence at each stage of the administrative process. *Ingram v. Commissioner*, 496 F.3d 1253, 1261 (11th Cir. 2007). If the claimant shows "good cause" for failing to submit the evidence to the ALJ, he can present the new evidence to the Appeals Council. *Id*. at 1259-60. The Appeals Council must consider "new, material, and chronologically relevant evidence" and must review the case if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Id*. at 1261; 20 C.F.R § 404.970(b). New evidence is material if it is relevant and probative so that there is a reasonable possibility that it would change the administrative result. *McCullars v. Commissioner*, 825 F. App'x 685, 692 (11th Cir. 2020). New evidence is chronologically relevant if it relates to the period on or before the date of the ALJ hearing. *Id*. at 692.

When denying a request for review, the Appeals Council is not "required 'to provide a detailed discussion of a claimant's new evidence.'" *Id*. at 692 (quoting *Mitchell v. Commissioner*, 771 F.3d 780, 783 (11th Cir. 2014)). However, it must "apply the correct legal standards in performing its duties." *Mitchell*, 771 F.3d at 784. In *Hethox v. Commissioner*, the panel determined that there was "nothing in the Appeals Council's denial to indicate that it properly determined whether the new, material evidence met Listing 12.05(C)'s requirements." 638 F. App'x 833, 836 (11th Cir. 2015). "Failing to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Id*. In *Mitchell*, the court determined that the proffered new evidence did not demonstrate the existence of an entirely new medical condition that might have caused the claimant's pain, but instead was additional evidence of claimant's condition. *Mitchell*, 771 F.3d at 783. Thus, the court found no affirmative indication that the Appeals Council perfunctorily adhered to the ALJ's decision; instead, the Appeals Council expressly stated in its notice to claimant that "it had considered his additional evidence." *Id.* So, the panel concluded there was "no basis on this record to second-guess that assertion." *Id*.

Here, the Appeals Council specifically acknowledged Plaintiff's new evidence, stating it "consider[ed] the reasons for disagreeing" with the ALJ's decision, but concluding "the reasons [did] not provide a basis for changing the [ALJ]'s decision" because the new evidence "[did] not provide a reasonable probability that it would change the outcome of the decision." (Tr. 2-3). This statement sufficiently demonstrates that the Appeals Council considered the new evidence. *Mansfield v. Astrue*, 395 F. App'x 528, 530 (11th Cir. 2010) (rejecting the Plaintiff's argument that Appeals Council was required to explain in non-conclusory terms why additional evidence would not have changed the ALJ's decision and instead finding that Appeals Council's statement of consideration of new evidence was sufficient). Indeed, the Appeals Council found Dr. Nichols's findings did not constitute material evidence – that is, Plaintiff's new evidence "[did] not show a reasonable probability that it would change the outcome of the decision." (Tr. 3). So, the question here is whether the new evidence meets the "new, material, and chronologically relevant standard." *Washington*, 806 F.3d at 1321. That is a question of law subject to *de novo* review. *Id.*

Plaintiff has not put forth any substantive analysis supporting his claim that the Appeals Council erred in denying review in light of Dr. Nichols's findings. He does not clarify why the new evidence (*i.e.*, Dr. Nichols's examination) is material. Instead, Plaintiff only makes a conclusory argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) ("[A]n appellant[] simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue....") *See also Tolbert on behalf of White v. Kijakazi*, 2022 WL 1410822, at \*5 (N.D. Ala. May 4, 2022). Plaintiff has abandoned his first claim by failing to substantively argue for the materiality of Dr. Nichols's findings.

Nevertheless, on the merits, the court concludes the Appeals Council did not err in denying review after considering Dr. Nichols's examination findings. Dr. Nichols noted Plaintiff meets the diagnostic criteria for PTSD.  (Tr. 27).  And, while the ALJ noted that Plaintiff had never been

diagnosed with PTSD by any medical source as of her decision, a diagnosis alone is insufficient to establish a functional impairment. *See Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (recognizing that a diagnosis alone is insufficient and that a claimant must demonstrate the effect of the impairment on his or her ability to perform work). (Tr. 47). In his brief, Plaintiff does not explain how the effects of the diagnosis that would impair his ability to work.  (Tr. 28).

But that is not all. Dr. Nichols' determinations are unsupported by some of her own findings. She reports Plaintiff had normal thought processes, normal orientation, no evidence of confusion, loose association, flight of ideas, delusions, or thought blocking; judgment and insight that were "considered to be good;" normal recent memory and adequate general fund of knowledge.  (Tr. 25-26). Dr. Nichols estimated Plaintiff functions within the average range of an adult's intellectual ability.  (Tr. 26).

Dr. Nichols's findings are also inconsistent with evidence from Dr. Tenchavez. Dr. Tenchavez commonly prescribed Plaintiff medication for depression and anxiety but made only minimal objective findings related to his mental state prior to July 2020.  (Doc. 20, pg. 10)  (Tr. 606-08, 656-53, 664-66, 692-94, 769-71, 781-83). The ALJ noted that Plaintiff's depression and anxiety had improved with medication to the extent that he stopped taking them and reported "doing well."  (Tr. 47). Dr. Tenchavez reported that Plaintiff's medication kept his pain well-controlled and without any adverse effects.  (Tr. 28, 640, 658, 686, 749, 751, 754, 757, 760, 766, 769, 775, 781, 787, 796, 809, 811, 814).

And, Dr. Nichols's findings are inconsistent with Plaintiff's own written testimony. Plaintiff indicated he was able to manage his personal care without assistance, take his medication without reminders, leave home and drive, manage his finances save for paying bills, visit and spend time with his in-laws, go places without someone accompanying, follow written and spoken orders, and get along with others including authority figures. (Tr. 370-77).

13

To be clear, the ALJ considered Plaintiff's alleged impairments through the four broad functional area criteria. (Tr. 40-41). She concluded Plaintiff only sustains *mild* limitations in the following four criteria while determining whether his impairments meet a listing: (1) understanding, remembering, or applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. (*Id.*). These determinations are inconsistent with Dr. Nichols's findings and are supported by substantial evidence. This substantial evidence includes Plaintiff's own testimony and Dr. Tenchavez's numerous statements that Plaintiff was in no acute distress, was oriented in all spheres, and that no psychiatric findings were noted. (Tr. 40-41).

Plaintiff has not shown that the Appeals Council erred in its denial of review after examining the medical evidence from Dr. Nichols.

### B.  The ALJ Properly Considered the Opinion of Nurse Seaman

Plaintiff next argues that the ALJ "refused" to accept the opinions of Nurse Seaman without stating the particular weight given to her medical opinion relative to others, and did not state, with some measure of clarity, the grounds on which she "repudiate[ed]" Nurse Seaman's opinion. To be sure, Nurse Seaman only examined Plaintiff on one occasion, and never treated Plaintiff with medicine or therapy. (Tr. 635-42). Title 20 C.F.R. § 404.1520c supplies the standards for an ALJ's review of reports of a medical opinion. The regulations adopt the persuasiveness test. *See* 20 C.F.R § 404.1520c(b). An ALJ considers the evidentiary supportability and consistency of medical opinions in evaluating a medical opinion's persuasiveness. *Id*. Further, one-time examiners are not entitled to be considered with any special weight. *Crawford v. Commissioner*, 363 F. 3d 1155, 1160 (11th Cir. 2004); *see also Clough v. Commissioner*, 813 F. App'x 436, 440 (11th Cir. 2020); *McSwain v. Bowen*, 814 F. 2d 617, 619 (holding one-time examiners are not entitled to deference or special consideration).

14

Plaintiff's argument that the ALJ erred in not stating with "good cause" is off the mark. An ALJ is only required to state "good cause" for not giving the medical opinion of a *treating physician* "substantial or considerable weight." *See Winschel v. Commissioner*, 631 F.3d 1176, 1179 (11th Cir. 2011) ("Absent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight.'") (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).

Though Plaintiff's arguments generally concern the supportability and consistency of Nurse Seaman's opinions, he fails to challenge head on the ALJ's specific findings that Nurse Seaman's opinion is: (1) unsupported by her own notes of positive objective findings, (2) inconsistent with record evidence that  Plaintiff's back pain was well-managed, (3) inconsistent with the record's indication that he had a normal range of motion of the cervical spine, knees, and shoulder, intact sensation, normal strength, negative impingement sign, and no instability, and (4) the record's indication that Plaintiff's condition improved after his right shoulder arthroscopy. (Tr. 46, 48-49). The ALJ's decision on this issue is due to be affirmed. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) (holding that a court's "judgment is due to be affirmed" when an appellant does not challenge any of the grounds on which the court made its decision). *See also Walker v. Commissioner*, 2022 WL 1022730 at *2 (11th Cir. 2022).

Nevertheless, the ALJ's decision to give little weight to Nurse Seaman's opinion is clearly articulated and explained in her decision and is supported by substantial evidence. For example, as the ALJ noted, Nurse Seaman's statements were unsupported by her own findings that Plaintiff had full range of motion of many joints, full strength of many muscle groups, intact sensation throughout his body, normal grip strength, intact fine and gross manipulation, regular heart rate and rhythm, lungs clear to auscultation, and an ability to write, pick up paper, and transfer on and off the exam table, all of which constitute positive findings. (Tr. 46, 636-40). The ALJ also

discussed the fact that Nurse Seaman's findings are inconsistent with reports from Dr. Tenchavez, which noted Plaintiff's pain management medicinal regime kept his pain well-managed without adverse effects. (Tr. 48, 640, 658, 686, 749, 751, 754, 757, 760, 766, 769, 775, 781, 787, 796, 809, 811, 814). The ALJ found the conclusion reached by the state agency medical consultant, Dr. Heilpern (that Plaintiff could perform work at a light exertional level) to be more persuasive than Nurse Seaman's findings.[2] (Tr. 48).

The ALJ's conclusions related to the persuasiveness of Nurse Seaman's opinions are supported by substantial evidence and are clearly articulated.

### C.    The ALJ Did Not Improperly Rely on Plaintiff's Subjective Testimony

Plaintiff also contends that the ALJ erred in relying on his daily activities in reaching her conclusion to deny benefits. The court disagrees.

In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). *See also* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); SSR 16-3p. So long as the initial element is satisfied, the ALJ evaluates the intensity and persistence of the claimant's alleged symptoms and the effect of those on the claimant's ability to work. *Wilson*, 284 F.3d at 1225.

In making such an evaluation, the ALJ considers the objective medical evidence, the nature of the claimant's symptoms, the claimant's daily activities, any precipitating and aggravating factors, the effectiveness of medication, the treatment sought for relief of symptoms, any measures

---

[2] Ultimately, the ALJ found even more limitations in arriving at her determination of Plaintiff's RFC than Dr. Heilpern stated were necessary. (Tr. 48).

the claimant takes to relieve the symptoms, and any conflicts between the claimant's statements and other record evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4).

An ALJ must "articulate explicit and adequate reasons" to discredit a claimant's statements. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). However, on appeal, generally "[t]he question is not ... whether [the] ALJ could have reasonably credited the claimant's testimony, but whether the ALJ was *clearly* wrong to discredit it." *Werner v. Commissioner*, 421 F. App'x 935, 939 (11th Cir. 2011) (emphasis added). Thus, courts in this Circuit will not disturb a clearly articulated finding discrediting a claimant's statements so long as the finding is supported by substantial evidence. *Mitchell*, 771 F.3d 780, 782.

The ALJ noted that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms. (Tr. 43). However, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with all evidence in the record. (*Id*.). The ALJ evaluated Plaintiff's medical evidence, treatment history, and testimony about his daily activities in making that determination. (Tr. 42-49).

The ALJ assessed Plaintiff's written and oral testimony related to his daily and monthly activities. As the ALJ noted, Plaintiff testified that he can watch television, shop in stores once a month, and do housework.  (Tr. 47). She also noted that Plaintiff indicated in his written report that he is able to manage his personal care, take his medication without needing reminders, drive and leave home, manage his finances (except for paying bills), visit and spend time with his in-laws, go places without someone accompanying him, follow written and spoken orders, and get along with others (including authority figures). (*Id*.). The ALJ found that these activities were consistent with a finding that Plaintiff has the ability to perform a range of light work and inconsistent with Plaintiff's allegation that he was unable to work in any capacity. (*Id*.).

17

Plaintiff argues the ALJ's weighing of his testimony related to his personal activities in daily and monthly life was improper. However, Plaintiff's main assertion is that his testimony relating to daily and monthly activities cannot be dispositive of whether or not he is disabled under the Act. In *Lewis v. Callahan*, the Eleventh Circuit held that "participation in everyday activities of short duration, such as housework or fishing" does not "disqualif[y] a claimant from disability." 125 F.3d 1441. Likewise, in *Foote v. Chater*, 67 F.3d 1553 (11th Cir. 1995), the Eleventh Circuit found that when an appellant's testimony is "not sufficient" for making conclusions about his RFC, the "the Court must consider 'the entire record and take account of the evidence relied on by the [Secretary].'" 67 F.3d at 1561 (quoting *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986)). But, neither of those cases help Plaintiff here.

The ALJ's decision does not suggest that Plaintiff's personal testimony about his activities disposes of the question of disability.  Nor is it implied in the decision that Plaintiff's testimony was the sole grounds by which the ALJ calculated Plaintiff's RFC. Rather, the ALJ "clearly 'articulate[d] explicit and adequate reasons' for discrediting [Plaintiff]'s allegations of completely disabling symptoms," and those reasons came from both the medical record and Plaintiff's own testimony. *Dyer*, 395 F.3d at 1210 (quoting *Foote,* 67 F.3d at 1561-62). The ALJ's determination is supported by substantial evidence.

### D.      The ALJ Properly Considered Plaintiff's Impairment of Obesity

Plaintiff contends that the ALJ did not properly consider his obesity in determining whether any of his impairments meet a listing. At step three of the sequential process, an ALJ must determine whether a claimant's impairment or combination of impairments is of such a severity that it meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. The Listing of Impairments describes ailments that are considered severe enough to prevent a person from completing "any gainful activity, regardless of his or her age, education, or

work experience." 20 C.F.R. § 404.1525(a). If a claimant's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. § 404.1520(a)(4)(iii),(d). However, a claimant bears the burden of proving that his impairments meet or equal one included in the Listing. *See Kalishek v. Commissioner*, 470 Fed. App'x. 868, 870 (11th Cir. 2012); *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991).

To prove a listed impairment or equivalent combination, a claimant must (1) establish that he has a diagnosed condition that is included in the Listing and (2) provide objective medical reports documenting that this condition meets the specific criteria of the applicable Listing and duration requirement. *See* 20 C.F.R. § 404.1525(a)-(d); *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). Additionally, to show that a combination of impairments equals an enumerated impairment, the medical findings must be "at least equal in severity and duration to the listed findings." 20 C.F.R. § 404.1525(a)-(d); *see Wilson*, 284 F.3d at 1224; *see also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (holding that an impairment manifesting only some of [a Listing's] criteria, no matter how severely, does not qualify). Of relevance here, "obesity may increase the severity of co-existing or related impairments to the extent that the combination of impairments meets the requirements of a listing." SSR 02-1p at *5.

Here, Plaintiff argues that the ALJ failed to discuss and evaluate his obesity and accompanying impairments in accordance with SSR 19-2p in step three of the analysis. Plaintiff incorrectly states that the ALJ made no reference to obesity in her opinion. (Doc. 17, pg. 40). At step two of the analysis, the ALJ explicitly referenced Plaintiff's obesity, and classified that condition as a severe impairment. (Tr. 38). Obesity is not a listed impairment, but it can increase the severity of a coexisting or related impairment to the extent that the combination of impairments equals a listing. SSR 19-2p. At step three, the ALJ stated she considered the non-listed

impairments, which included obesity as she referenced that condition at step two, in combination with Plaintiff's other impairments in determining if any of the impairments rose to the level of a listed impairment.  (Tr. 42). The ALJ did not expressly use the term "obesity" at the step three analysis. But, that does not render the ALJ's analysis in any way incomplete. Rather, the ALJ's finding that obesity did not alter the analysis at step three enough for any impairment to equal a listing is implied from the record.  *See Prince v. Commissioner*, 551 Fed. App'x. 967 (11th Cir. 2014) (finding no error in the ALJ's failure "to make detailed findings or explicitly discuss whether her impairments met or equaled a Listing" because the finding could be implied from the ALJ's discussion of the relevant medical evidence); *see also Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986) (holding that the ALJ implicitly found that the claimant did not meet a Listing because it was clear from the record that the ALJ had considered the relevant law and evidence).

Plaintiff's reliance on *Early v. Astrue*, 481 F.Supp.2d 1233 (N.D. Ala. 2007), is misplaced because, in *Early*, the ALJ did not find obesity to be a severe impairment. 481 F.Supp.2d 1239. (Tr. 38). His reference to *Hall v. Saul* is also inapposite. To be sure, in *Hall* the district court remanded the case back to the Commissioner because "[t]he ALJ's lone mention of a diagnosis of obesity at Step Four is insufficient to show whether she determine[d] obesity to be a medically determinable impairment." 2019 U.S. Dist. LEXIS 156964, at *11-13. But, the ALJ in *Hall* did not mention or address obesity at step two or step three. *Id*. To the contrary, here, at step four and in determining Plaintiff's RFC, the ALJ addressed and discussed Plaintiff's obesity. The ALJ reviewed the evidence to account for limitations from obesity pursuant to SSR 19-2p – namely, exertional functions, non-exertional functions, stress on weight-bearing joints, limitations of range of motion, ability to manipulate objects, ability to tolerate environmental conditions, and physical and mental ability to sustain function over time. (Tr. 44). The ALJ determined that Plaintiff maintains the RFC to perform a light range of work, with the exception that he could not push or

pull leg controls, be exposed excessive vibration, unprotected heights or hazardous machinery, climb ladders, ropes, scaffolds, kneeling, crouch, or crawl, and only occasionally overhead reach and climb stairs and ramp, with a stand-or-sit option. (Tr. 42). Plaintiff has not addressed these findings in his argument. *See Doe v. Moore*, 410 F.3d 1337, 1349 (holding that issues raised without supporting substantive argument are deemed abandoned). But the ALJ's determination is still backed by substantial evidence.

One more point is noteworthy. Even while "diagnosing" Plaintiff with obesity, Nurse Seaman concluded that he was able to write, pick up a piece of paper, and transfer on and off the exam table. (Tr. 46, 638). Dr. Tenchavez's pain medication prescriptions were reported to have kept Plaintiff's pain "well-controlled" and without adverse effects. (Tr. 46, 658, 686, 749, 751, 754, 757, 760, 766, 769, 775, 781, 787, 796, 809, 811, 814). Examination findings from The Orthopedic Center show that Plaintiff had a normal range of motion of his cervical spine after multiple surgeries, and a normal range of motion of the knees. (Tr. 46, 734-45). The record evidence also demonstrates a satisfactory range of motion in Plaintiff's right shoulder after a right shoulder arthroscopy. (Tr. 712-22, 734-45). Plaintiff was only noted to have ambulated with a cane on one occasion and that usage coincides with a since-treated knee injury. (Tr. 47). The ALJ's determination of Plaintiff's RFC, even considering his diagnosis of obesity, is supported by substantial evidence.

**E.    The ALJ's Decision is Supported by Substantial Evidence**

Plaintiff's final argument is that the ALJ's decision is not based on substantial evidence. He argues the ALJ erred in rejecting Nurse Seaman's opinion and the psychological evaluation of Dr. Nichols, as well as relying on the VE's testimony (which he contends was not based on a correct or full statement of his limitations and impairments). (Doc. 17, pg. 43).

The court has already disposed of the arguments that the ALJ improperly rejected the opinion of Nurse Seaman and that the Commissioner erred in not reviewing the ALJ's decision in light of Dr. Nichols's findings. And, the court has previously explained why substantial evidence supports the ALJ's determinations of Plaintiff's RFC and that his impairments do not meet a listing. So, the court turns to Plaintiff's argument regarding the testimony of the VE.

A VE's testimony may provide substantial evidence to support an ALJ's step-five finding that there are other jobs in significant numbers in the national economy that a claimant can perform. *See Ingram,* 496 F.3d at 1270. Such testimony may constitute substantial evidence when the ALJ poses "a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999); *see also* 20 C.F.R. §§ 404.1560(b). However, an ALJ is "not required to include findings in the hypothetical that [were] properly rejected as unsupported." *Crawford*, 363 F.3d at 1161.

The ALJ heard testimony from a VE at the hearing in July 2020. (Tr. 89-96). The ALJ posed a hypothetical question that asked the VE to consider whether a person of Plaintiff's age, education, past work experience, and limitations could perform any work. (Tr. 90). The VE testified that the hypothetical person could perform jobs that exist in the national economy in significant numbers, specifically that of an information clerk and weight recorder. (Tr. 91-92).

Plaintiff argues that the hypothetical question did not contain an accurate statement of his pain level or RFC, as the ALJ allegedly did not accurately determine his limitations and impairments. The court has already rejected these arguments. The ALJ did not err in posing the hypothetical question to the VE nor in relying on the VE's testimony. The ALJ's decision is supported by substantial evidence.

## VI.     Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed.  A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this August 18, 2022.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE